William H. Hixson, Defendant in Error, v. Charles F. Ward, Plaintiff in Error.

Gen. No. 7,875.

filed October 14, 1929,

HALL & DUSHER, for plaintiff in error.

NORTH, LINSCOTT, GIBBONEY & NORTH, for defendant in error.

MR. JUSTICE JETT delivered the opinion of the court.

This is a replevin suit instituted by Hixson, defendant in error, in the circuit court of Winnebago county, against Ward, plaintiff in error. The following facts are stipulated:

Tom Calderotta owned an automobile. T. H. Hehir desired to purchase it. They entered into a conditional sales contract to which was attached, by perforation, a promissory note. The contract and note are, by stipulation, admitted in evidence.

Calderotta sold the contract and note to Hixson. They were dated August 24, 1926.

On September 13, 1926, and after Hixson had bought the papers, Hehir paid to Calderotta the balance of the purchase price of the car in full.

When payment was made Hehir did not know the papers had been sold, having received no notice thereof, and believed in good faith that Calderotta was still the holder and owner of the contract and note.

Shortly after making the payment Hehir sold the car to Barrenche, free from incumbrance, and Barrenche then sold it to defendant Ward, free from incumbrance. Barrenche and Ward each bought in good faith without notice of the plaintiff's claim. Hixson claims ownership of the car by virtue of his ownership of the contract; Ward claims ownership of the car by purchase for value without notice of Hixson's claim. Such is the case made by the stipulation.

On consideration of these facts, the court found that Hixson is the owner of the car; that Ward wrongfully took and detained the same, and that he has no title or ownership in the car and has no right to the pos-

session thereof, and entered judgment accordingly. Ward brings the suit here for review.

Prior to the adoption of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 4 *et seq.*, in 1915, a contract by which personal property was sold, delivery of the property made to the buyer, and title reserved in the seller until the purchase price was paid, was good in Illinois only between the parties, and did not bind execution creditors nor bona fide purchasers from the purchaser. *Graver Bartlett Nash Co. v. Krans,* 239 Ill. App. 522, and cases cited on page 526.

The Uniform Sales Act, Cahill's St. ch. 121a, ¶ 4 *et seq.*, changed the rule in this state as to conditional sales contracts. By section 20 of this act, Cahill's St. ch. 121a, ¶ 23, such contracts are authorized and in *Sherer-Gillett Co. v. Long,* 318 Ill. 432, a conditional sales contract similar to the one in this case is dealt with.

Section 76 of the act, Cahill's St. ch. 121a, ¶ 79, defines the term "Document of title to goods," and the contract of sale in this case falls within the definition.

Section 27 of the act, Cahill's St. ch. 121a, ¶ 30, defines "Negotiable Document of Title" and several of the following sections recognize and speak of "Non-negotiable documents of title."

Section 73 of the act, Cahill's St. ch. 121a, ¶ 76, provides that "In any case not provided for in this Act, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy, or other invalidating cause, shall continue to apply to contracts to sell and to sales of goods."

This case will turn on the question whether the sales contract herein is a negotiable document of title. If it is negotiable, its indorsement and delivery to Hixson is all that is required to vest in him such title as to

entitle him to the possession of the car whenever Hehir failed to make the payments to him as they fell due under the contract. If it was not negotiable, Hixson was required to notify Hehir of his purchase of the contract, or to show that he knew of it in order to prevent him from completing the sale by paying Calderotta the purchase price, and thus acquiring title to the car under the contract. The inquiry is—What is necessary to make such a document negotiable? The answer is found in section 27 of the act, Cahill's St. ch. 121a, ¶ 30, which provides that if it is stated in the document that the goods mentioned therein will be delivered to bearer, or to the order of a person named therein, it is negotiable.

There is no such statement in this contract. The statement is that seller (Calderotta) has delivered to buyer (Hehir) and agreed to sell him the car, the buyer agreeing to pay seller or assigns $513.63, which is further evidenced by the negotiable note signed by the buyer, etc. It is not stated in the document that the goods referred to therein will be delivered to the bearer, or to the order of any person named in the document. Such a statement would be inconsistent with the one that the goods referred to have been "delivered to buyer" as stated in the document.

Section 31 of the same chapter, Cahill's St. ch. 121a, ¶ 34, provides for the transfer of a document of title which is not in such form that it can be negotiated. It can therefore, be transferred but it cannot be negotiated. Now what is the effect when a document of title is transferred but not negotiated?

By examination of section 34 of the same chapter, Cahill's St. ch. 121a, ¶ 37, we find that the person to whom it is transferred acquires title to the goods as against the transferrer, subject to the terms of any agreement with the transferrer; and if, as in this case, the document is non-negotiable, such person acquires

the right to notify the bailee (meaning, of course, the buyer who is in possession) that the document has been transferred, and thus place him under direct obligation to hold possession of the goods for him, the transferee, according to the terms of the document.

Thus it appears that when this document was transferred to Hixson, he acquired title to the car as against Calderotta, subject to the terms of the agreement between Calderotta, the seller, and Hehir, the buyer. One of the terms of that agreement, and the only one that needs to be taken into consideration, is that the title to the car shall remain vested in Calderotta or assigns, until the purchase price has been fully paid. When the purchase price has been fully paid the title automatically vests in the buyer. 35 Cyc. page 671, and cases cited. To the same effect is *Federal Trust Co. v. Bristol County St. R. Co.,* 222 Mass. 35, 109 N. E. 880 and in *Hunter v. Crook,* 93 Miss. 812, 47 So. 430.

Hence when Hehir paid the purchase price to Calderotta, he completed the sale. The condition on which Calderotta had reserved the title was extinguished and with it was extinguished the inchoate right of Hixson. The sale was complete; the title, by virtue of the agreement, and the payment of the balance due, vested in Hehir, not by reason of any estoppel, but by purchase under a completed and fully executed sales contract, and of course those who claim title through him should be protected.

It might be said that Hehir was negligent in not demanding his papers when he made his payment to Calderotta, and he was, for the note attached to the contract was negotiable and was in the hands of a purchaser in due course, for a value. That, however, does not affect the rights of Ward in the car. It is stipulated that Hehir made his payment in good faith and without notice; also that Barrenche and Ward bought in good faith.

Section 76 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 79, says, among other things, "A thing is done 'in good faith' within the meaning of this Act when it is in fact done honestly, whether it be done negligently or not." No case has been cited that conflicts with the views herein expressed. A somewhat extended search has failed to reveal such a case.

The case of *Sherer-Gillett Co. v. Long,* 318 Ill. 432, relied on by counsel, is not at all like this case. There the company entered into a conditional contract with Taylor for the sale of goods and reserved the title until Taylor should make certain payments; Taylor never made the payments; he never completed the sale; he never extinguished the condition on which the company held the title and hence the title never vested in him. What he did was to sell, or attempt to sell the goods, which was in violation of his contract, as well as beyond his power. He had no title, never did have, and could not convey what he did not have.

Owing to the conclusion we have reached, we conclude that the court erred in the holding of certain propositions of law presented by the defendant in error, and in refusing certain propositions presented by plaintiff in error.

The stipulation, in addition to what has already been said, provides as follows: "It is further stipulated and agreed, by and between the parties hereto, that in the event the court shall find for the defendant C. F. Ward, and shall order that possession of said car be delivered to him, that the defendant shall have the right to submit to the court, without a jury, the issue of damages, if any, which may have been caused on account of the replevin of the automobile in question and either party shall have the right to introduce such competent evidence on such an issue of damages as he shall see fit."

We are of the opinion that the plaintiff in error, Ward, was the owner of and entitled to the possession

of said car, and the judgment of the circuit court of Winnebago county is reversed and the cause remanded for further proceeding not inconsistent with this opinion and for hearing on the question of damages in accordance with the stipulation of the parties.

*Reversed and remanded accordingly.*