MAYOR'S JEWELERS OF FT. LAUDERDALE, INC., Plaintiff-Appellee, *v.* LORRAINE I. LEVINSON *et al.*, Defendants-Appellants.

Second District (2nd Division)    No. 75-132

Opinion filed June 8, 1976.

Keegan & Gosdick, of Rockford, for appellants.

Harold Turner, of Kalivoda, Turner & Shoemaker, of Rockford, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action was brought by plaintiff, Mayor's Jewelers of Ft. Lauderdale, Inc., to recover two rings in the possession of defendants. The Circuit Court of Winnebago County gave judgment for plaintiff.

Donald Levinson was about to have a 25th wedding anniversary. He asked plaintiff to find a diamond of exactly 2.5 carat so that he could present it to his wife Lorraine on the occasion. Plaintiff found what it believed would meet Levinson's requirement and on July 12, 1972, mailed the diamond from Florida to Donald Levinson in Rockford, Illinois, for his approval. Accompanying the ring was a conditional sales contract signed by the seller but not by Donald Levinson, also a note stating, "I know your lovely wife will be thrilled with her token of your sentiment on the great occasion of your 25th anniversary."

The conditional sales contract sets forth in bold print:

*"NOTICE TO BUYER*

THIS IS A CONDITIONAL SALES CONTRACT UNDER WHICH MAYOR'S RETAINS TITLE TO THE ABOVE DESCRIBED GOODS UNTIL THEY ARE PAID FOR IN FULL."

After receipt of the ring with the accompanying contract Donald Levinson on July 15, 1972, telephoned the plaintiff stating he approved the ring and would be in to pay for it in a few weeks. The ring was presented to Lorraine Levinson on July 15, 1972.

On October 28, 1972, Levinson appeared at Mayor's Store in Florida and signed his name to the store's copy of the contract. On the same date Levinson also purchased a gold wedding band for $800, signed a conditional sales contract for it and paid $1,000 on his account at Mayor's leaving a balance of $7800 to be paid plus finance charges.

No further payments were ever made by Levinson who was nearing bankruptcy. Levinson then gave a promissory note to defendant Phillip B. Johnson in amount of $10,000 for fees for representing Levinson in bankruptcy proceedings. On March 14, 1973, Lorraine Levinson pledged both rings to attorney Johnson to secure payment of the $10,000 note.

Plaintiff was scheduled by Levinson in the bankruptcy proceedings as a general unsecured creditor and after hearing this plaintiff commenced this action seeking return of the rings. The trial court entered summary judgment in favor of Mayor's giving it possession of both rings. Defendants do not on appeal challenge the correctness of the judgment as it pertains to the wedding band but do contend that because Levinson did not sign the contract until Octber 28, 1972, ownership passed to him on receipt of the ring on July 15, 1972, free of any security interest.

The prefatory portion of the "title" section of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—401) rejects the "title" concept or approach where other Code provisions can be utilized. Each provision of article 2 on sales with regards to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Section 2—401(1) provides in pertinent part.

" * * * Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

The Code defines "security interest" (section 1—201 (37)) in pertinent part as follows:

'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation.

A transaction in the form of a conditional sale or a sale with retention of title will create a purchase-money security interest. Section 2—401(1).

Article 9 of the Code applies to security interests created by conditional sale or by other lien or title retention contract (section 9—102(2)) and to any transaction (regardless of its form) which is intended to create a security interest in personal property. Section 9—102(1)(a).

Code Section 9—203(1) prior to July 1, 1973, provided that a security interest is *not enforceable* against the debtor or third parties unless the collateral is in the secured parties' possession or the debtor has signed a security agreement which contains a description of the collateral.

Code section 9—204(1) prior to July 1, 1973, provided that a security interest cannot attach until there is agreement that it attach.

Under the Code, a written security agreement that meets certain formal requisites is necessary to the creation and enforceability of a security interest (Annot., 30 A.L.R. 3d 9, 42, §11 (1970)), unless the collateral is in the possession of the secured party (Code section 9—203(1)). There are exceptions which are not pertinent to this case.

In the present case there was written evidence of the security agreement although not signed by the debtor.

A technical anomaly existed between the code provision (prior to July 1, 1973) that no nonpossessory security interest is *enforceable* against anyone, in absence of a written agreement signed by the debtor (section 9—203(1)) and the provision that a security interest does not attach in the absence of an agreement to that effect, without specification in the second provision (section 9—204(1)) that the agreement must be in writing. See Final Report of the Review Committee for article 9 of the Uniform Commercial Code, section 9—203(1) as proposed. 69 Am. Jur. 2d *Secured Transactions* §333 (1973).

In using the term "security interest" it is necessary to bear in mind the concepts of "attachment" and "perfection" and "enforceability" in connection with any security interest. The concept of attachment and enforceability of security interests was formerly contained in section 9—204(1) but effective July 1, 1973 was transferred to subsections (1) and (2) of section 9—203 of the Illinois Code. The revision remedies an anomaly under the earlier text that a security interest could "attach" and be "perfected" and still be "unenforceable" against anyone for want of a written security agreement. Ill. Ann. Stat. ch. 26, §9—203, Illinois Code Comment (Smith-Hurd 1974).

When Levinson accepted the ring on July 15, 1972, he did so upon the written condition that the seller retain title until paid in full for the ring. A security interest attached July 15, 1972. In some instances a security interest is perfected by attachment alone, with nothing more. Perfection may be by attachment alone with respect to a purchase-money security

interest in consumer goods. (Section 9—302(1)(d).) Consumer goods are defined by section 9—109(1) as follows: "Goods are

(1) 'Consumer goods' if they are used or bought for use primarily for personal, family or household purposes."

Accordingly Mayor's security interest attached and was perfected on July 15, 1972. The security interest was not then "enforceable" because the debtor had not signed as required by section 9—203(1). But by Levinson's signing on October 28, 1972, the security interest became enforceable thereafter.

The donee of the gift, Lorraine Levinson, took subject to the security interest since she gave no value for the ring as defined in section 1—201 (44)(d) nor was she a buyer. Section 9—307(2).

Defendant Johnson was neither a "buyer in ordinary course of business" (section 1—201 (9)) nor did he "buy for his own personal, family, or household purposes" (section 9—307 (2)).

The entry of summary judgment for plaintiff by the trial court was proper and is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.