WHITE MOTOR CREDIT CORP. *v.* EUCLID NATIONAL BANK.*

---

* This decision was affirmed by the Eighth District Court of Appeals, case No. 40013, on April 3, 1980.

(No. 76-954508—Decided September 25, 1978.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Squire, Sanders & Dempsey* and *Mr. Edward J. Brzytwa,* for plaintiff.
*Messrs. Hertz, Kates, Freiedman & Kammer* and *Ms. Colette Gibbons,* for defendant.

LAWTHER, J. This lawsuit concerns a replevin action brought by the plaintiff White Motor Credit Corporation against the defendant Euclid National Bank. The prayer for relief asks for the return to the plaintiff of eleven White Mobilift trucks. However, after the complaint was filed, the parties by agreement sold the property in question and deposited the proceeds of the sale in an escrow account for distribution to the party which prevails in this lawsuit.

Basically, the parties disagree as to which has the prior perfected security interest in the trucks. The facts are as follows; they are not disputed.

White Materials Handling Division of White Motor Corporation and A.A.A. Lift Truck, Inc., signed a contract on January 23, 1973, which made A.A.A. Lift Truck a dealer for White trucks in the Cleveland area. Within a month (on February 20, 1973), White filed financing statements with the Ohio Secretary of State and the Cuyahoga County Recorder listing A.A.A. Lift Truck as the debtor and White Materials as the secured party. These financing statements covered all new and/or used lift trucks sold or financed by White Materials.

On August 9, 1974, A.A.A. Lift Truck, Inc., merged with A.A.A. Lift Truck Leasing, Inc., the surviving corporation. Several months later, between December, 1974, and February, 1975, White Materials delivered eleven lift trucks to A.A.A. on credit. Concurrent with each delivery, White Materials conveyed for valuable consideration all interest it had in the trucks to plaintiff, White Motor Credit. (Hereinafter, White Motor Corp., White Materials Handling Division, and White Motor Credit Corp. will all be referred to

as "White", for their individual identities have no bearing on this lawsuit).

Then, on February 10, 1975, and March 10, 1975, defendant Euclid National Bank filed financing statements with the Secretary of State and the Cuyahoga County Recorder claiming security interests in the same eleven lift trucks. It should be noted that each truck was delivered to A.A.A. before Euclid National Bank filed a financing statement concerning it.

If all the above occurred with the proper documentation, and assuming for the moment that no merger was involved, then the following analysis would hold true. White's security interest in each truck would have been perfected earlier than Euclid National's corresponding security interest because White's security interest was perfected at the time of delivery, which for each truck was before the time Euclid National perfected by filing. R. C. 1309.15(A) and 1309.22(A).[1] Earlier perfection would then entitle White's security interest to priority. R. C. 1309.31(E)(2).[2]

However, defendant bank argues that plaintiff White never achieved a valid security interest in the lift trucks. Defendant also alleges that plaintiff filed improper financing statements and therefore never perfected any security interest.

To answer the question whether plaintiff had a valid security interest in the lift trucks, the court must first determine whether a security agreement existed, for by definition a security interest is always provided for or created by a security agreement. R. C. 1309.01(A)(8). Actually, a security agreement is just one kind of contract. Henson, *Secured Transactions,* Section 3-10 (1973). As such, one looks to the transaction between the debtor and the creditor to see if it is intended to have effect as security. If so, a security agreement exists. See comment to R. C. 1309.02.

Plaintiff argues that documents involved in the dealings between White and A.A.A. prove that the creation of a security interest was intended, and that a purchase money security interest was, in fact, created. Plaintiff cites clause five of the dealer's contract between White and A.A.A. which reads: "Ti-

---

[1] Ohio law will be used because both parties refer to it exclusively, although the dealer's contract calls for reference to Minnesota law.

[2] R. C. 1309.31(C) is not applicable because its notice requirements were not met.

tle, ownership and right to possession of goods purchased by the Dealer hereunder shall remain in the Companies [White] at Dealer's risk until the purchase price thereof and interest are fully paid," and then refers the court to R. C. 1301.01(KK) which states: "The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer, section 1302.42 of the Revised Code, is limited in effect to a reservation of a 'security interest.'"

The defendant counters this argument with evidence of provisions of the same dealer's contract which appear to contradict the above cited clause five. Clause sixteen, for instance, says that the dealer must furnish security when requested by White. Clause twenty-four (a) refers to a similar request for security, and clause nine speaks of a security agreement executed at the time of "sale and delivery" of goods under the contract.

Both parties also point to various terms in the invoices delivered with the trucks. Defendant mentions that the sales were made on "open account" and not "floor plan"; yet, defendant presents no evidence as to the commercial meaning of the latter term. Plaintiff, on the other hand, refers the court to the reverse side of the invoices, each of which carries retention of title by the seller language similar to that found in clause five of the dealer's contract.

To the court, though, the most important evidence in this regard involves the financing statements executed by White and A.A.A. These instruments were signed soon after the dealer's contract was created, and their clear purpose was to create security in favor of the plaintiff. While the court does not say that financing statements by themselves can constitute security agreements, the court does believe that these financing statements read in conjunction with clause five of the dealer's contract demonstrate an intention on the part of White and A.A.A. to provide for security. Therefore, this court finds that clause five of the dealer's contract constitutes a valid security agreement.

Next, the defendant bank argues that, considering the factual situation, an after-acquired property clause was a necessary element of the security agreement, and that no such clause existed. After-acquired property clauses are authorized by R. C. 1309.15(C) which states: "* * * a security agreement

may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement." This kind of clause, defendant contends, must be expressly written into the security agreement. 2 Gilmore, *Security Interests*, Section 35.5 (1965). However, Anderson disagrees with the above. He states that: "Where a reasonable man, looking at the description of the collateral, would recognize that it was intended to extend to replacements and additions, the security interest will have that effect." 4 Anderson, *Uniform Commercial Code*, Section 9-204:9 (1971). Of the two standards, the court prefers the Anderson reasonable man test, for the statute never declares that after-acquired property clauses must be express.

Looking at the security agreement located in clause five of the dealer's contract, one must conclude that it places a security interest upon all goods purchased on credit throughout the term of the dealer's contract. This is the reasonable meaning of that clause, and so the court finds that the security agreement between plaintiff and defendant did contain a valid after-acquired property clause.

Third, defendant contends that plaintiff never achieved a valid security interest in the lift trucks because the security agreement (as part of the dealer's contract) was signed by the A.A.A. Lift Truck, Inc., whereas the lift trucks were delivered to A.A.A. Lift Truck Leasing, Inc., a different corporation. More specifically, the defendant bank cites R. C. 1309.14(A) which states: "***a security agreement is not enforceable against the debtor or third parties unless:***(2) the debtor has signed a security agreement***," and asserts that security agreements binding debtors and covering after-acquired property are not effective with respect to property later acquired by that debtor's successor-in-interest.

Again, the undisputed facts are as follows. White and A.A.A. Lift Truck signed the dealer's contract creating a security agreement on January 25, 1973. A.A.A. Lift Truck, Inc., then merged with A.A.A. Lift Truck Leasing, Inc., in August, 1974, and the former A.A.A. Lift Truck lost its corporate existence. Some five to six months later the trucks were delivered to the surviving corporation, A.A.A. Lift Truck Leasing.

In light of these facts, the court is faced squarely with the question whether a security agreement which binds a cor-

porate debtor is effective with respect to property acquired by a corporation which merged with and survived the debtor corporation.

Security agreements are basically contracts. R. C. 1309.01(A)(8), and Henson, *Secured Transactions,* Section 3-10 (1973). Further, a security interest does not attach until a security agreement exists, value is given and the debtor has rights in the collateral. R. C. 1309.15(A). Therefore, no security interests arose until the trucks were delivered, and that occurred long after A.A.A. Lift Truck had merged with A.A.A. Lift Truck Leasing. So, directly before the merger in August, 1974, all that existed between White and A.A.A. Lift Truck was a contract, the security agreement.

Ohio corporation law specificies what happens to the rights, duties and obligations of the parties to a corporate merger. R. C. 1701.82(A)(4) states: "The surviving or the new corporation is liable for all the obligations of each constituent corporation***." The same is echoed in the merger agreement which says "the Surviving Corporation shall become subject to all the debts and liabilities of the constituent corporations in the same manner as if the Surviving Corporation had itself incurred them."

Ohio corporation law thus mandates that the security agreement signed by A.A.A. Lift Truck is enforceable against the surviving corporation, A.A.A. Lift Truck Leasing. This court therefore holds that a security agreement signed by a corporate debtor and which reaches after-acquired property is effective with respect to property later acquired by another corporation with which the former corporate debtor merged.

The court believes that this result is not inconsistent with the spirit of R. C. 1309.14. That statute, as most commentators say, is really a kind of Statute of Frauds, for it requires a signed written contract describing the collateral. The dealer's contract which contains the security agreement satisfies these requirements although a new debtor is now liable upon it. A result to the contrary would be disastrous, for then a security agreement could be evaded by a sham corporate merger.

To this point the court has determined that a valid security agreement existed which contained an after-acquired property clause, and which was enforceable against third parties.

Defendant's final contention is that plaintiff's financing statements were insufficient, so that plaintiff never properly perfected its security interest.

Defendant argues that the improper debtor, A.A.A. Lift Truck, Inc., was listed on the financing statements instead of its successor, A.A.A. Lift Truck Leasing, Inc., the actual debtor, and that therefore the financing statements were insufficient.

The relevant statute, R. C. 1309.39(A), requires among other things that a financing statement give the mailing address of the creditor. Of course, this means that the debtor must be identified. The statute goes on to say in subsection (E) that: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." However, the defendant suggests that when a common name such as A.A.A. is involved, absolute precision is necessary in designating the debtor on a financing statement.

There exists a decision which involves a very similar situation. *In re Kittyhawk Television Corporation* (C.A. 6, 1975), 516 F. 2d 24, held that a name change from Kittyhawk Broadcasting Corp. to Kittyhawk Television Corp. (the former being the name of the debtor on the financing statement, the latter being the name of the actual debtor), was not seriously misleading and did not cause the financing statement to be insufficient. The court stated that the names of the debtor were sufficiently similar so that a third party could reasonably be expected to be put on notice. The decision when on to say that the policy of the statute was to avoid secret liens and that the name change involved presented little danger of such happening.

Returning to the case at hand, this court finds, in light of *Kittyhawk,* that the name change of the debtor from A.A.A. Lift Truck, Inc., to A.A.A. Lift Truck Leasing, Inc., was a minor and not seriously misleading name change, and that there was substantial compliance with R. C. 1309.39, so that plaintiff's financing statements were valid.

Earlier, this court stated that plaintiff's security interest in the lift trucks would have priority over the defendant's conflicting security interest in those same trucks unless either the plaintiff's security agreement or financing statements were in-

valid. Having found that plaintiff's security agreement was valid and reached after-acquired property, and that plaintiff's financing statements were enforceable against third parties, this court holds that plaintiff perfected its security interest in the lift trucks, and that this interest has priority over the defendant's conflicting security interest in those same trucks.

*Judgment for plaintiff.*