In re LEGAL COOPERATIVES, INC., Debtor.

Ronald J. SOMMERS, Trustee,

v.

INTERNATIONAL BUSINESS MACHINES and West Publishing Company.

Bankruptcy No. HP–79–419. Adv. B.

United States Bankruptcy Court, S. D. Texas, Houston Division.

July 31, 1980.

Ronald J. Sommers, Houston, Tex., trustee.

Steven A. Leyh, Houston, Tex., for West Pub. Co.

## Memorandum Opinion on Complaint To Sell Free And Clear Of Liens

EDWARD H. PATTON, Jr., Bankruptcy Judge.

The matter before the court is a complaint to sell certain law books free and clear of liens. The complaint was brought by the trustee in bankruptcy of the debtor, Legal Cooperatives, Inc. (hereinafter referred to as LCI) against the defendant, West Publishing Company (hereinafter referred to as West), which answered by alleging that it has a perfected security interest in the property that the trustee seeks to sell free and clear.

LCI was in the business of subdividing office space into offices and leasing it to attorneys. On August 23, 1978 Michael Walters, the secretary-treasurer of LCI, met with Ed Buckrey, a representative of West. At that meeting Mr. Walters, on behalf of LCI, agreed to purchase some law books from West.

The form used for the purchase of the books is an installment sales contract which calls for a down payment plus monthly installment payments. The instrument contains the names and addresses of both parties, a description of the books, and the signatures of Mr. Walters and a representative of West. Among other things, the contract provides that West "retains title to said books until paid. . . ."

A photocopy of this agreement was filed with the Texas Secretary of State's Office in Austin, Texas. A UCC–1 form financing statement was stapled to and filed with the photocopy of the agreement. This financing statement has the names and addresses of LCI and West, a signature of a representative from West, and a reference to the attached agreement. The UCC–1 form financing statement does not have a description of the collateral and it is not signed by the debtor.

LCI filed a Chapter XI petition in bankruptcy on June 19, 1979 and was adjudicated a bankrupt on July 23, 1979. On September 11, 1979 the trustee filed his complaint to sell free and clear of liens.

The trustee asserts that he is entitled to sell the books for the benefit of the estate because (1) the agreement between LCI and West is not a security agreement, and (2) even if it is a security agreement it was not properly perfected. West alleges that it is entitled to the books because it is the holder of a valid, perfected security interest in the books. Thus the court must determine whether the contract between LCI and West created a security interest and if so, whether that security interest was properly perfected.

A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Tex.Bus. & Comm.Code Ann. § 1.201(37) (1968). The primary question for determining whether a transaction is to be treated as a security interest is whether the transaction is intended to have effect as a security. *Matter of Miller*, 545 F.2d 916, 918 (5th Cir. 1977); Tex.Bus. & Comm.Code Ann. § 9.102, Comment 1, (Supp.1980). A sale with retention of title by the seller creates a security interest. *Mayor's Jewelers of Ft. Lauderdale, Inc. v. Levinson*, 39 Ill.App.3d 16, 349 N.E.2d 475, 19 UCC Rep. 1206, 1208 (1976), *See* Tex.Bus. & Comm.Code Ann. §§ 2.401(a), 1.201(37) (1968).

Here, the trustee argues that the contract does not create a security interest because the language of the agreement between LCI and West does not contain provisions which are usually found in security agreements, such as default provisions and acceleration clauses. The court believes that such provisions are not necessary to create a security interest. Rather, the retention of title is sufficient. While a security agreement "must contain language which specifically creates or grants a security interest . . .", *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703 (10th Cir. 1972), there is no reason why language which keeps title in the seller until the goods are paid for should be insufficient. Had Mr. Walters, a practicing attorney for 15 years, bothered to read the document that he willingly signed, he would have realized that it was more than a mere purchase order. The language of the agreement is plain and unambiguous, and the clause reserving title in the seller is not in fine print. In fact, no part of the agreement is in fine print; it is short and simple to read. Under these circumstances, the court is compelled to hold that the agreement in question created a security interest.

This brings the court to the issue of whether West's security interest was properly perfected. At trial the deposition testimony of Henry Garcia, deputy director of the Uniform Commercial Code Division of the Secretary of State's Office, and Ralph Queen, an examiner of questioned documents, tended to prove that the original document executed by LCI and West was not filed with the secretary of state's office. Mr. Queen's testimony was that the copy of the agreement on file with the secretary of state was not the original, but was only a photocopy. West did not present any testimony that the original was ever filed, and there was no explanation by either side of what happened to the original. Thus the only credible evidence presented to the court was that the agreement on file was not the original but was a photocopy. Furthermore, it is clear that the reproduction that was filed was never actually, physically, and manually signed. Therefore, the second issue before the court may be more precisely stated as whether a security inter-

est can be perfected by filing a reproduction of a security agreement, and if so, whether that security agreement must be actually, physically, and manually signed or authenticated by the debtor to be effective.

■■■ To be effective, a financing statement must contain the names and addresses of the secured party and the debtor, a description of the collateral, and it must be signed by the debtor.[1] Tex.Bus. & Comm. Code Ann. § 9.402(a) (Supp.1980). Section 9.402(a) also provides that

> [a] copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor. A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state.

At this point it should be noted that the UCC–1 form financing statement filed with the security agreement was not sufficient to perfect a security interest because it did not have any description of the collateral and because it was not signed by the debtor. Therefore, if West's security interest is properly perfected it is because the copy of the security agreement filed meets the requirements of § 9.402.

The copy of the security agreement on file with the secretary of state does not provide that a reproduction is sufficient as a financing statement, and there is no evidence that the original agreement was filed in this state. This leaves only the possibility that the security agreement is sufficient as a financing statement under the first sentence quoted above. The copy of the security agreement on file provides all of the information required by § 9.402: it has the names and addresses of both parties and a list of the collateral covered by the security agreement. The only question that remains is whether it is signed by the debtor.

The trustee takes the position that the copy of the security agreement on file is ineffective as a financing statement because it is not actually, physically and manually signed by LCI and therefore is not signed by the debtor as required by § 9.402(a).

The term "signed" is defined as including "any symbol executed or adopted by a party with present intention to authenticate a writing." Tex.Bus. & Comm.Code Ann. § 1.201(39) (1968). Comment 39 to § 1.201 states that the question is always "whether the symbol was executed or adopted by the party with present intention to authenticate the writing."

Research reveals only two cases that deal with the validity of photocopied signatures on financing statements. In *In re Kane*, 1 UCC Rep. 582 (Bank.Ct.E.D.Pa.1962), the court held that a mere photocopy of a financing statement was not signed by the debtor because "signed" meant "an actual signature manually produced by a writing instrument in the hand of the signer in direct contact with the document being executed." *Id.* at 587. On the other hand, in *In re Bennett*, 6 UCC Rep. 994 (Bank.Ct.W. D.Mich.1969), the court upheld the effectiveness of a photocopy of a security agreement filed as a financing statement against a bankruptcy trustee's challenge that it was not signed by the secured party, as was then required by § 9.402. The court gave three reasons for its ruling. First, the court said that § 1.102 of the Uniform Commercial Code (hereinafter referred to as the Code) states that the Code is to be liberally construed to promote the policies underlying the Code. Second, the court noted that the policy underlying § 9.402 of the Code is to provide a system of notice filing and not to penalize secured creditors for technical imperfections. Finally, the court cited § 9.402(h) which provides that minor errors which are not seriously misleading do not invalidate a financing statement. *Id.* at 996.

■■■ Keeping in mind the policies underlying § 9.402, the court believes that the better view is represented by *Bennett* and

---

1. Contrary to the trustee's assertion, the signature of the secured party on the financing statement is no longer required. Tex.Bus. & Comm. Code Ann. § 9.402(a) (Supp.1980).

that the security agreement here is effective as a financing statement. When Mr. Walters signed the security agreement with West he clearly intended to authenticate the writing. The reasonable inference is that when he signed the security agreement he then also intended to adopt his signature on accurate photocopies made for the purpose of notice filing in order to perfect a security interest. The purpose of the Code's filing system is to provide notice of existing security interests to potential creditors; it was not designed to serve as a statute of frauds. The goal of the Code is to "simplify, clarify, and modernize the law governing commercial transactions." Tex. Bus. & Comm.Code Ann. § 1.102(b)(1) (1968). Under the present circumstances the assertion by the trustee that the security agreement should not be given effect as a financing statement because it is not signed by the debtor is overly technical and does not promote the policy of notice filing. There is no question of the accuracy of the security agreement. In fact, a search made by the secretary of state's office revealed West's security interest and showed the names and addresses of both parties. The error, if any, in filing a photocopy which has not been actually, physically, and manually signed by the debtor is one which is minor and not seriously misleading.

The trustee also contends that both the security agreement and the UCC–1 form financing statement are defective, that two defective documents are insufficient to perfect West's security interest, and that one defective document cannot be used to cure the deficiencies of the other. *See Travelers Indemnity Co. v. First National Bank of Jackson*, 368 So.2d 836, 25 UCC Rep. 1455 (Miss.1979). The trustee further contends that even if the security agreement filed by West is not deficient it is still ineffective because when a security agreement and a financing statement are filed together (as is the case here), the financing statement controls; since the UCC–1 form financing statement filed by West is defective, the trustee concludes that the security interest is unperfected. *See In re Uptown Variety*, 6 UCC Rep. 221 (Bank.Ct.D.Or.1969).

*Travelers Indemnity* is distinguishable because the court has concluded that the security agreement alone is sufficient as a financing statement and it therefore does not need the UCC–1 form to cure any deficiencies. *Uptown Variety* does state that when a security agreement and a financing statement are filed simultaneously as a single filing, the security agreement "is in all respects superfluous, *at least insofar as indexing is concerned.*" (emphasis added) *Id.* at 224. In that case the financing statement listed the debtor as the secured party and the secured party as the debtor, while the security agreement correctly listed the parties. The filing clerk indexed the documents under the name of the secured party and not under the name of the debtor. The court reasoned that the filing officer should be able to look to the financing statement rather than to the security agreement to determine the name under which the documents should be indexed. Since the financing statement listed the wrong party as the debtor and would not be discovered by a person searching under the name of the debtor, the court held that the security interest was unperfected. The case does not stand for the proposition that when a security agreement and a financing statement are filed together, the financing statement will necessarily control for all purposes. Here, it is undisputed that the documents were correctly indexed, and this court concludes that for purposes of determining whether all of the elements required by § 9.402 are present, the financing statement does not necessarily control over the security agreement. Since there were no indexing errors and no potential creditors would have been misled by the filing, it is reasonable to allow the security agreement to control over the financing statement. A potential creditor searching the records would find the financing statement and the security agreement. Since both the UCC–1 form financing statement and the security agreement were correctly indexed and potential creditors would not be misled, it seems proper that the security agreement should be given effect as a financing statement.

To sum up, West has a valid security interest which was perfected by the filing of the security agreement with the Texas Secretary of State's office. The security agreement is effective as a financing statement because it has all the information required by statute and it is signed by the debtor.

A judgment conforming with this opinion is being entered this date.