In re Donald LaVaughn HAUS a/k/a Donald L. Haus and Emma Pearl Haus a/k/a Emma P. Haus, Debtors.

Donald L. HAUS and Emma P. Haus, Plaintiffs,

v.

BARCLAYS AMERICAN CORPORATION and Westinghouse Credit Corporation, Defendants.

Bankruptcy No. 81–00222.
Complaint No. 81–0087.

United States Bankruptcy Court, D. South Carolina.

Jan. 6, 1982.

D. Nathan Davis, Charleston, S. C., for plaintiffs.

Elbert M. Rozier, Jr., North Charleston, S. C., for defendant Barclays.

Jeffrey C. Walters, Westinghouse Credit Corp., Columbia, S. C., for defendant Westinghouse.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The plaintiffs, Donald L. Haus and Emma P. Haus, filed a complaint to avoid certain liens pursuant to 11 U.S.C. § 522(f)(2)(A)[1] on March 20, 1981. The defendants, Barclays American Corporation ("Barclays") and Westinghouse Credit Corporation ("Westinghouse") defend, claiming to be holders of purchase-money security interests not avoidable under § 522(f)(2)(A).

## FACTS

On February 9, 1979, the plaintiffs signed a sales contract ("February 9, 1979 sales contract") for the purchase of a gas range from Cate-McLaurin Company, Inc. ("Cate-McLaurin"). At that time, they paid $200 on the purchase price, leaving a balance of $183.84. On March 2, 1979, the plaintiffs made an additional payment of $183.76, leaving a balance of $.08 on the range; this payment was credited to the account on May 24, 1979.

---

1. Section 522(f): "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien imparis an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—* * * (2) a nonpossessory, nonpur-chase-money security interest in any—(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; * * *."

On March 2, 1979, the plaintiffs signed two more sales contracts ("March 2, 1979 sales contracts") for the purchase of a washer and dryer and a color television. No down payment was made on these items. Like the purchase of the gas range, each of these sales contracts contained language whereby the seller retained title to the merchandise until the purchase price was paid in full. The contracts also stated that full payment was to be made on open account within thirty days, subject to a monthly finance charge on any remaining balance.

On May 24, 1979, Donald Haus signed a retail installment contract ("May 24, 1979 security agreement") on which the color television, washer and dryer and gas range were listed as the goods sold. This contract granted a security interest in the described goods to the seller, Cate-McLaurin. On the same day, the retail installment contract was assigned by Cate-McLaurin to Barclays, which, at the time of the assignment, was known as Home Credit Company of South Carolina, Inc.

On January 12, 1980, the plaintiffs signed a sales contract ("January 12, 1980 sales contract") for the purchase of a stereo from Cate-McLaurin. This contract contained language whereby the seller retained title to the merchandise until the purchase price was paid in full. The contract also stated that the payments were to be made on an open account which required payment in full within thirty days, with any remaining balance being subject to a finance charge.

On April 7, 1980, Donald Haus executed a security agreement ("April 7, 1980 security agreement") granting a security interest in the stereo to the seller, Cate-McLaurin. On the same day, Cate-McLaurin assigned this security interest to Westinghouse.

On February 19, 1981, the plaintiffs filed a joint petition for relief, under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701, *et*

*seq.*), wherein they claimed the television, washer and dryer, range, and stereo to be exempt property pursuant to 11 U.S.C. § 522(d)(3)[2], because their interest in any item of this property does not exceed $200 in value.

## ISSUE

The issue is whether the defendants hold nonpurchase-money security interests which the plaintiffs may avoid pursuant to § 522(f)(2)(A).

## DISCUSSION AND CONCLUSION

### I

The defendants claim purchase-money security interests as a result of Cate-McLaurin's assigning its security interests in the goods to the defendants. In South Carolina the assignee of a contract acquires a purchase-money security interest when it is assigned a contract in which the assignor previously has acquired a purchase-money security interest. 1967–1968 Op. Att'y Gen., No. 2407, p. 52. Therefore, whether the defendants have purchase-money security interests depends on whether the seller, Cate-McLaurin, possessed—at the time of assignment to the defendants—purchase-money security interests in the goods.

S.C.Code § 36–9–107 (1976), states that "a security interest is a 'purchase money security interest' to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; . . . ."

A "security interest" is defined in S.C. Code § 36–1–201(37) (1976) as "an interest in personal property or fixtures which secures payment or performance of an obligation." S.C.Code § 36–1–201(37) (1976) goes on to state that "[T]he retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer . . . is limited in effect to a reservation of a 'security interest'." Therefore, the result

2. Section 522(d): "The following property may be exempted under subsection (b)(1) of this section: * * * (3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor."

of Cate-McLaurin's reservation of title in the items sold was to reserve a security interest for Cate-McLaurin in those items. *See, Sommers v. International Business Machines*, 640 F.2d 686 (5th Cir. 1981); *Mayor's Jewelers of Ft. Lauderdale, Inc. v. Levinson*, 39 Ill.App.3d 16, 349 N.E.2d 475 (1976); *Firestone Stores v. Henderson*, 27 Ohio Misc. 160, 269 N.E.2d 75 (Dayton, Ohio, Mun.Ct.1971); *White Motor Credit v. Euclid National Bank*, 63 Ohio Misc. 7, 409 N.E.2d 1063, 30 U.C.C.Rep. 331 (Cuyahoga County, Ct.App.1980).

One of the Article 9 provisions, relating to the requirements for an enforceable security interest, is set out in S.C.Code § 36–9–203 (1976) which provides that:

(1) Subject to the provisions of § 36–4–308 on the security interest of a collecting bank and § 36–9–113 on a security interest arising under the Chapter on sales, a security interest is not enforceable against the debtor or third parties unless * * * (b) the debtor has signed a security agreement which contains a description of the collateral * * *.

A "security agreement" is defined in S.C. Code § 36–9–105(1)(h) (1976) as "an agreement which created or provides for a security interest." "Agreement" is defined in S.C.Code § 36–1–201(3) (1976) as ". . . the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or cause of performance as provided in this act (§§ 36–1–205 and 36–2–208) . . . ."

The South Carolina Reporter's Comments to S.C.Code § 36–9–203 (1976) state that "[W]hen the security interest is nonpossessory, subsection (1)(b) requires only a security agreement signed by the debtor and a description of the goods."

■ In order to satisfy S.C.Code § 36–9–203(1)(b) (1976) a security agreement must: "(1) contain sufficient language to embody a 'security agreement', (2) include an adequate 'description of the collateral', and (3) be 'signed by the debtor'." J. White and R. Summers, *Uniform Commercial Code*, 903 (2d ed. 1980).

■ Numerous cases have held that a sales contract in which the seller retains title to the goods until the purchase price is paid contains sufficient language to show an intent by the parties to create a security interest. *Sommers; In re Legal Cooperatives, Inc.*, 5 B.R. 382 (Bkrtcy.); *Mayor's Jewelers of Ft. Lauderdale, Inc.; Firestone Stores*; and *White Motor Credit*. The sales contracts of February 9, 1979, March 2, 1979, and January 12, 1980, contained sufficient language to create security agreements. Furthermore, since these sales contracts adequately described the collateral and were signed by the plaintiffs, they are security agreements as defined in S.C. Code § 36–9–203 (1976) and constitute valid purchase-money security interests in favor of Cate-McLaurin, pursuant to S.C.Code § 36–9–107(a) (1976). The security interests in these consumer goods were automatically perfected. S.C.Code § 36–9–302(1)(d) (1976).[3]

## II

■ In determining whether the defendants have nonpurchase-money security interests, the next question which arises is whether or not the purchase-money security interests created by the plaintiffs' signing of the four sales contracts were extinguished because of the refinancing of these debts by the plaintiffs' execution of the May 24, 1979 and April 7, 1980 security agreements. If the original purchase-money security interests were extinguished by these refinancings, then the defendants are the assignees of nonpurchase-money security interests which the plaintiffs may avoid.

This court's opinion in *In re Rosen*, Case No. 81–00476, Complaint No. 81–0227 (D.S.

3. S.C.Code § 36–9–302(1) (1976) provides that: "A financing statement must be filed to perfect all security interest except the following: . . .

C.1981)[4], held that a finance company's purchase-money security interest was extinguished by the refinancing of the original purchase-money loan. In making this determination, the court focused on various aspects of the refinancing loan which are also present in the instant case. These factors included such things as a difference in the amounts financed in the first and second loans, the same collateral securing the additional debt as well as the original purchase debt, and the fact that the debtor's rights in the collateral were acquired at the time of the original transaction.

In *Matter of Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C.1980), the court, in determining that the purchase-money character of the finance company's lien was extinguished by the refinancing of the original note, considered the following factors:

> The refinancing resulted in the execution of new Promissory Notes which contained variations from the old Notes in the amounts financed, interest rates, payment amounts, payment numbers, and the total of payments.

*Id.* at 656.

In the instant case, the security agreements of May 24, 1979 and April 7, 1980 contained different interest rates, payment numbers and payment amounts from the four original sales contracts.

Although *Rosen* and *Jones* involve purchase-money security interests of parties other than the original sellers, some of the factors considered in those cases are helpful in determining whether a transaction involving a seller's purchase-money security interest pursuant to S.C.Code § 36–9–107(a) (1976) was a refinancing of the original debt.

In determining whether a seller's refinancing of a debt secured by a purchase-money security interest extinguishes that purchase-money security interest, this court finds persuasive the reasoning of *In re Mulcahy*, 3 B.R. 454 (Bkrtcy.S.D.Ind.1980), in which the court, holding that a lender's refinancing of its contract with the debtors extinguished the purchase-money nature of the security interest, states:

> Had the Mulcahys gone to a third party lender and borrowed money to pay off Morris Plan, that paying off would certainly have had that effect. The court sees no reason why a different rule should apply merely because Morris Plan transferred money from its right pocket to its left.

*Id.* at 456–457.

If the Hauses had gone to a third party lender and borrowed money to pay off the four sales contracts with Cate-McLaurin, that lender would not have a purchase-money security interest in the collateral. The result is not different just because the party who paid off the four sales contracts was also the seller of the items involved; the refinancings embodied in the May 24, 1979 and April 7, 1980 security agreements extinguished the purchase-money security interests which Cate-McLaurin acquired through the four sales contracts.

## III

Apart from the extinguishment of the purchase-money security interests because of the refinancings, it is well settled that if consumer goods secure any indebtedness other than their own and there is no formula for application of the payments, the security interest in those goods is not a purchase-money security interest. *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir. 1975); *W. S. Badcock Corp. v. Banks (In re Norrell)* 426 F.Supp. 435 (M.D.Ga.1977); *Quality Furniture Co., Inc. v. Cooper (In re Johnson)*, 1 Bankr.Ct. Dec. 1023 (S.D.Ala. [Bankr.] 1975); *In re Trotter*, 12 B.R. 72 (Bkrtcy.C.D.Cal.1981); *In re Booker*, 9 B.R. 710 (Bkrtcy.M.D.Ga. 1981); *In re Mulcahy*, 3 B.R. 454 (Bkrtcy.S.D.Ind.1980); *In re Jackson*, 9 U.C.C.Rep. 1152 (W.D.Mo. [Bankr.] 1971).

Cate-McLaurin's security interest in the television and washer and dryer also se-

---

(d) a purchase money security interest in consumer goods; ...."

**4.** Appeal docketed October 27, 1981 (C/A 81–2408–8, D.S.C.)

cured the range which had been paid off when the security agreement was executed on May 24, 1979. This security agreement made no provision for the application of payments to particular items and did not indicate the order in which purchases were to be paid off and the individual amounts due on each item. Therefore, at least one of the consumer goods listed on the May 24, 1979 security agreement which was assigned to Barclays secured an indebtedness other than its own, and, therefore, the May 24, 1979 security agreement did not create a purchase-money security interest.

## IV

Since the May 24, 1979 and April 7, 1980 security agreements created only non-purchase-money security interests, the defendants, as assignees of these security agreements, took no more than the assignor had, which, in this case, were nonpurchase-money security interests.

## V

The defendants hold nonpurchase-money security interests in household goods and furnishings that are held primarily for the debtors' personal and household use. Thus, the debtors may avoid the defendants' security interests to the extent which they impair the debtors' exemption.

## ORDER

It is, therefore, ORDERED, ADJUDGED AND DECREED that the plaintiffs have judgment against the defendants avoiding the nonpossessory, nonpurchase-money security interests of the defendants to the extent said security interests impair the plaintiffs' exemption of household goods and furnishings.