**In re HILLEBRAND METAL WORKS, INC., an Illinois Corporation, C.T.R., Inc., an Illinois Corporation, Debtors.**

**Bankruptcy Nos. 83 B 12245, 83 B 12246.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 23, 1984.

Ira Bornstein, Harvey J. Barnett & Assoc., Chicago, Ill., for petitioner.

Daniel Zazove, Robert Berliner, Levy & Erens, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

### I.

This proceeding arises from a motion of U.I.P. Engineered Products Corporation ("UIP") for relief from the Section 362 automatic stay. 11 U.S.C. § 362 (Supp. V 1981). C.T.R., Inc. ("CTR") as debtor-in-possession, LaSalle National Bank, as trustee of certain premises, and A.P. Machine and Development, Ltd. object to UIP's motion. The issue before this court is whether UIP has an interest in the property in issue (cranes) sufficient to warrant relief from the stay.

### II.

CTR was the subtenant of UIP of certain premises owned by LaSalle National Bank ("Bank"). Pursuant to the terms of the sublease, CTR had the right to use certain cranes which were then owned by UIP. CTR, however, defaulted on the sublease. As a result, UIP obtained a money judgment against CTR and an order of replevin against the cranes.

On October 12, 1982, the parties reached an agreement settling the claims and vacating the judgment. As part of the agreement, UIP agreed to sell the cranes to CTR for approximately $15,000. The total settlement package was $76,493.21. Paragraph two of the settlement agreement provided that UIP would retain title to the cranes until CTR completely satisfied its obligations under the agreement. The cranes remained at the premises in the possession of CTR prior to and after the sale. After paying in excess of $40,000 under the agreement, CTR ceased making payments and thereby failed to fulfill its obligations. Thereafter, on October 5, 1983, CTR filed its petition in these proceedings. UIP has never filed a financing statement on the cranes under Article 9 of the Illinois Commercial Code. Ill.Rev.Stat. ch. 26, § 9–101 *et seq.* (1983). (Hereinafter only the specific sections of the Illinois Commercial Code will be cited).

On February 17, 1984, UIP filed a motion for relief from the automatic stay claiming that it had retained title to the cranes. Therefore, UIP reasons, it is entitled to have the stay lifted as to the cranes. CTR, however, argues that UIP is a general unsecured creditor and therefore has no basis to lift the stay. In support, CTR cites Sections 1–201(37) and 2–401 of the Illinois Commercial Code. These sections provide that any retention or reservation of title by a seller of goods is limited to a reservation of a security interest. By failing to file a financing statement on the cranes, it is argued that UIP is simply relegated to the status of unsecured general creditor.

In rebuttal, UIP presented two arguments. First, UIP argues that Article 2 is inapplicable because the cranes, having a "fixed nature", were not "movable" and therefore not "goods" as defined in Section 2–105(1). Alternatively, UIP contends that

the present facts require the application of Section 2–401(3)(a). Section 2–401(3)(a) provides:

> Unless otherwise explicitly agreed where delivery is to be made without moving the goods, (a) if the seller is to deliver a document of title, title passes at the time when and place where he delivers such documents; . . . .

Supporting the application of Section 2–401(3)(a), UIP claims that the delivery was made without moving the cranes and that the UIP–CTR agreement contemplated the delivery of a document of title to the cranes. UIP argues that it never parted with the title to the cranes. Accordingly, UIP claims that as title holder, it has a sufficient interest in the cranes to lift the stay.

The Bank argued that the UIP–CTR agreement gave rise to an Article 9 security interest which was never perfected. Therefore, the Bank claims that UIP is a general unsecured creditor and thus has an insufficient interest in the cranes to warrant a lifting of the stay.

### III.

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> . . . on request of a party *in interest* and after notice and a hearing, the court shall grant relief from the stay provided under subsection (d) of this section, such as by terminating, annulling, modifying or conditioning such stay . . . (emphasis supplied).

11 U.S.C. § 362(d) (Supp. V 1981). This court must determine whether UIP has an interest in the cranes and, if so, whether the interest is sufficient to sustain a lifting of the stay.

■ Initially, UIP's reliance upon Section 2–401(3)(a) is misplaced. This court finds as persuasive the rationale in *Putterbaugh v. Fournier*, (*In Re Happy Jack's Restaurant*), 29 U.S.C.Rep.Svce. 653 (Bkrtcy. Maine 1980) (where seller purported to retain title to goods delivered without moving them, the question of title to goods delivered without moving them, the question of title was not material in resolving dispute between seller and buyer thereby rendering Section 2–401(3) inapplicable).[1] Section 2–401(3)(a) specifically addresses the situation where the seller is to deliver a "document of title". Section 1–201(15) defines a "document of title" in pertinent part as ". . . a document [which] must purport to be issued by or addressed to a *bailee* and purport to cover goods in the bailee's possession . . ." (emphasis supplied). Section 7–102(1)(a) defines "bailee" in relevant part as ". . . the person who by a warehouse receipt, bill of lading or other document of title *acknowledges possession of goods and contracts to deliver them.*" (emphasis supplied).

UIP failed to introduce into evidence a purported document of title to the cranes. This is so because a document of title never arose in the UIP–CTR transaction. A document of title to the cranes requires a document addressed to a bailee who acknowledges possession of the cranes and contracts to deliver the cranes. It is uncontested that the cranes remained at the premises throughout the relevant time period. Therefore, a bailee was never engaged to deliver the cranes to CTR.

Comment 15 to Section 1–201(15) is in agreement with this analysis. This comment cautions that:

> . . . by making it explicit that the obligation or designation of a third party as "bailee" is essential to a document of title, this definition clearly rejects any such result as obtained in *Hixson v. Ward*, 254 Ill.App. 505 (1929), which treated a conditional sale contract as a document of title.

This court finds that a document of title in the cranes never arose in the UIP–CTR transaction. Accordingly, Section 2–401(3)(a) is inapplicable in the instant case.

Additionally, this court finds that regardless of whether Article 2 applies, Article 9 certainly applies. The broad language of Section 9–102(2) sweeps the UIP–CTR

---

1. The relevant Maine sections of the Commercial Code are identical to the corresponding Illinois sections. Me.Rev.Stat.Ann.Tit. 11, § 1–201(15) § 2–401(3)(a) (1964).

agreement within its ambit. Section 9–102(2) provides in relevant portion:

> This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or *title retention contract* and lease or consignment intended as security. (emphasis supplied).

Clearly, the agreement in which UIP was to retain title to the cranes falls within Section 9–102(2). Title retention contracts have been found to be security contracts by Illinois Courts. *See, Harney v. Spellman,* 113 Ill.App.2d 463, 465, 251 N.E.2d 265 (4th Dist.1969) (title retention contract with respect to household items found to be "indubitably and purely a security contract"); *See also, Mayor's Jewelers v. Levinson,* 39 Ill.App.3d 16, 17, 349 N.E.2d 475 (2nd Dist. 1976) (conditional sale contract which retains title to jewelry in the seller creates a security interest); and *Household Finance Corp. v. Mowdy,* 13 Ill.App.3d 822, 827, 300 N.E.2d 863 (2nd Dist.1973) (an installment sales contract which retains title to a pool creates a security interest).

■ Moreover, Section 1–201(37) of the General Provisions of the Illinois Commercial Code defines a "security interest" as:

> an interest in personal property or fixtures which secured payment or enforcement of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer ... is limited in effect to a reservation of a security interest...

Furthermore, Section 9–202 of the Code dictates:

> *Title to Collateral Immaterial.* Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.

Therefore, the purported title retention of the UIP–CTR agreement is immaterial for purposes of ownership. The attempted title retention by UIP created a security interest in the cranes which required perfection under Section 9–401. By failing to file a financing statement, UIP failed to perfect its interest in the cranes.

Sections 544(a) and 1107 of the Bankruptcy Code vest the debtor-in-possession with the rights and powers of a hypothetical judgment creditor without notice under state law. 11 U.S.C. §§ 544(a) and 1107 (Supp. V 1981). In the same vein, Section 9–301(1)(b) provides that UIP's unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. Under Section 9–301(3), a lien creditor includes a trustee in bankruptcy from the date of the filing of the petition. Thus, UIP's unsecured interest in the cranes is subordinate to the claims of CTR as debtor-in-possession.

In conclusion, UIP retained merely a security interest in the cranes through the purported title retention agreement. UIP, however, never perfected its security interest in the cranes. Therefore, UIP is simply a general unsecured creditor. As a result, UIP has no ownership or secured interest in the cranes. Accordingly, UIP has no basis upon which to warrant relief from the Section 362 automatic stay. Thus, UIP's motion for relief from the automatic stay is denied. Counsel for CTR is to furnish a draft order in accordance with this opinion within five days.