RICHMOND HOMES, INC., ET AL., APPELLANTS, *v.* LEE-MAR, INC., APPELLEE.

[Cite as Richmond Homes, Inc., v. Lee-Mar, Inc., 20 Ohio App. 2d 27.]

(No. 29464—Decided October 9, 1969.)

28

*Messrs. Dworken, Haiman & Yarus,* for appellants.
*Messrs. Mancino, Mancino & Mancino,* for appellee.

DAY, J.   On plaintiffs' petition for declaratory judgment, the trial court found for the defendant, dismissed the petition and entered judgment for the defendant. From this action the plaintiffs appealed, assigning two errors:

"1. The trial court erred by omitting from its findings of fact that the contract of February 27, 1960, imposed upon the seller the obligation to convey said lots fully improved and that the purchase price specifically included the entire cost of the installation of paving, grading, engineering costs and the costs of the installations of the utilities.

"2. The trial court erred in finding as a matter of law that the contract of purchase was merged into the deed."

The record, consisting of the original papers, including the admissions in the pleadings and an oral stipulation reduced to writing and filed with the papers in the case, is sufficient without a bill of exceptions to exemplify facts upon which the claimed errors are based.   See, *Bailey* v. *Bushnell* (Cuyahoga County App., 1962), 89 Ohio Law Abs. 449, 450.   That record includes the findings of fact of the court below and:

(a) The relevant contract clauses from the contract (and its supplement) to purchase and sell certain lots in original Bedford Township.

(b) The relevant sections from the escrow agreement prepared by the seller's counsel and followed by the parties in consummating the transfer of the properties.

(c) The clauses of the deed, executed by the seller, and delivered by it to the buyers and by them accepted and recorded, relevant to the issue of the merger in the deed of contractual agreements made by the seller in the original sales contract relating to the inclusion of certain described improvements in the purchase price of the parcels in question, including designated sublots fronting on Columbus Road.

(d) The fact that the city of Bedford Heights, Ohio, made special assessments against the buyers to cover the cost of the improvements described in (c).

The deed transferring title did not reserve the "agreement" and "understanding" of the sales contract. The contract was later supplemented without any change of the terms related to the issue here. The crucial terms for the matter on trial were:

"4. The seller hereby agrees that the purchase price of $4,700.00 for each lot includes all costs of engineering, paving, grading, sanitary sewer installations, a storm sewer installation and water line installation to each and every lot being sold therein together with the connections for said sanitary and storm sewer and water line to the property line. And all of the above enumerated installations shall meet with the construction requirements of the village of Bedford Heights, Ohio. In addition thereto, the seller herein undertakes to obtain all acceptances and acceptance certificate or approval from the village of Bedford Heights, Ohio, for maintenance of the above installations from the village of Bedford Heights, Ohio, for the benefit of the buyer herein.

"5. The seller hereby agrees that as part of the consideration for each lot herein that the seller will rough grade with clean fill dirt each and every lot within the approximate building grade established for each and every home by the engineer of the village of Bedford Heights, Ohio, or the city so that buyer herein shall not be required to move any mass amount of soil. Seller also agrees to clear each lot of all trees or shrubs from such areas as are necessary for the installation of sewer line, building area and driveway. Rough grading shall be commenced within thirty (30) days of the date of request of the buyer herein to rough grade each lot and shall be completed thereafter as soon as possible or practicable. It is understood that the seller herein shall not be held responsible for any delay caused by weather conditions, strikes, or other conditions beyond the control of the seller herein.

"6. The seller hereby agrees to deliver title to all the lots being sold herein to the buyer by a good and sufficient

warranty deed conveying good and marketable title to said lots to the buyer herein, free and clear of any and all liens and encumbrances except restrictions of record, easements, reservations and conditions of record, zoning ordinances, if any and taxes and assessments both general and special for the last half of 1959 and thereafter.

"All taxes and assessments shall be pro-rated as of date of transfer upon the basis of the last available tax duplicate. All respreads, if any, to be paid by seller."

"9. It is specifically understood that the cost to buyer of the lots being sold herein includes the entire cost for the installation of the paving, grading, engineering costs and the cost of the installation of the utilities hereinabove specified which are to be a part of the lots conveyed herein."

In relevant part the escrow agreement provided:

"4. You are to pro-rate taxes and assessments on the within lots to the date of filing the mortgage and you are to charge the seller with the same and credit the buyers with the same. You are to use the last available tax duplicate or bill in determining said tax prorations. In the event there are any respreads upon these lots, then they are to be charged and paid for by the seller."

The parties both assert *and* concede in the pleadings that the sales contract imposed upon the seller the obligation to convey lots, the consideration for each of which included "all costs of engineering, paving, grading, sanitary sewer installations, a storm sewer installation and water line installation" and the "entire cost for the installation of the paving, grading, engineering costs and the cost of the installation of the utilities." With the evidence in the agreed posture the trial court omitted this fact from its findings. It is obvious that there is no warrant in law for the omission of facts which are conceded and material.

To support the legal conclusion of the trial court, the appellee urges that the doctrine of merger melded the contract commitments into the title deed when the latter was accepted without reservation and without including those contractual terms which appellants claim entitle

them to prevail. As authority for its contention the appellee relies upon *Dependabilt Homes, Inc.,* v. *Grant Wayne Co.* (1959), 169 Ohio St. 224, and *Fuller* v. *Drenberg* (1965), 3 Ohio St. 2d 109.

*Dependabilt Homes, Inc.,* is distinguishable on the ground that the matters merged in the deed in the transaction in that case were contingencies.

The *Fuller* court, treating the issue before it solely as a pleading question, sustained a demurrer to all of three alternate causes of action—to the first on the ground that the doctrine of merger wiped out a contract contingency,[1] cf. *Dependabilt Homes, Inc.,* v. *Grant Wayne Co., supra,* and on the further ground that the presence of a sewer pipeline covering the statutory equivalent of a natural watercourse could not be deemed an incumbrance within the covenants of the deed. The demurrer to the second cause of action was sustained on the ground that a theory of mutual mistake of fact could not be based on ignorance of the fact. The third alternative proceeded on the theory of fraud. The court in *Fuller* found this third cause of action inconsistent with the second in its theoretical foundation. This inconsistency made the third claim vulnerable to demurrer, but the court specifically said:

"It should not be implied that a good cause of action on the theory of fraud could not have been alleged by the plaintiffs under the facts and circumstances of this case. * * *" (page 114 of 3 Ohio St. 2d.)

In the instant case it is clear that there was no merging contingency involved. Rather, there was a representation in the contract of sale in the form of an "agreement" and "understanding" that the purchase price "for each lot" included all costs for the described items.

Thus the facts here bring this case within merger exceptions announced in *Rhenish* v. *Deunk* (Cuyahoga County, 1963), 7 Ohio App. 2d 225, and *Zander* v. *Blumenthal* (Cuyahoga County, 1964), 1 Ohio App. 2d 244.

In the *Rhenish case,* this court said that a sales con-

[1] *I. e.,* issuance of a building permit by the city of Willowick. The permit issued but was revoked on discovery that the city's sewer pipeline traversed the property about three feet underground.

tract provision for the payment of a special assessment against real property was not obliterated by merger because the provision:

"* * * created no * * * contingent liability. It was collateral in character. The obligation to pay the assessed paving costs was as definite and certain as the obligation to pay the purchase or sales price. * * *" (p. 231)

Six months later, in *Zander*, this court considered, among other contentions, whether a provision in a contract of sale for a "three-family frame dwelling" merged in the deed conveying a "two-family" to block an action for damages on the contract.

Concluding that the coalescence did not take place, the court held:

"We also determine that the doctrine of merger does not obtain in the instant case. Where the acceptance of a deed is *induced* by false representations, *or* by representations that in the exercise of reasonable diligence one should know to be false, the representations and the deed are distinct and the representations are not merged in the deed." (p. 249) (Emphasis supplied.) Cf. also *Fries* v. *Gannon* (Hamilton County, 1918), 9 Ohio App. 387.

The controlling relevance of the decisions in *Rhenish* and *Zander* to the facts here could hardly be more obvious.'

Accordingly, both assignments of error are well taken. The judgment below is reversed and the cause is remanded to the trial court with instructions to enter judgment for the plaintiffs absolving them from liability for the payment of the special assessment in issue and allowing them their costs, including the cost on this appeal.

*Judgment reversed.*

WHITE and WASSERMAN, JJ., concur.

---

²It is noted that implicit in the rationale of the *Rhenish case* on the specific point of merger is the suggestion that the doctrine of merger will not cure a failure of consideration. Cf. 38 A. L. R. 2d 1310, Section 15, at 1334.