### In the Matter of DAYTON SUZUKI, INC., Debtor.

**Bankruptcy No. 3–82–03224.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 3, 1983.

DeWayne Smith, Troy, Ohio, for debtor.

Thomas F. Folino, Dayton, Ohio, for Earl G. Stepp.

Jack Pickrel, Dayton, Ohio, trustee.

### DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

The Trustee in Bankruptcy on 6 January 1983 served notice of sale of the inventory and equipment of the estate, appraised at $7,500.00. On 31 January 1983 Earl G. Stepp filed "Objection to Sale," claiming a valid security interest in the property, and referring to a proof of claim filed on December 10, 1982, in the amount of $33,-483.40. At the hearing on 7 February 1983 decision was reserved for two weeks pending receipt of legal memoranda.

The claim of Stepp stems from an "Agreement (and Pledge of Stock)" (attached to the objection) executed on or about December 1, 1978, wherein the Debtor corporation purchased one share of the common stock held by Stepp for $21,500.00. $500.00 was paid on the date of the agree-

ment and the balance, with 6 per cent interest, by a promissory note of even date, payable in consecutive monthly installments of not less than $700.00.

A secured proof of claim had been filed by Earl G. Stepp on 10 December 1982 for the amount of $33,483.40, to which was attached a similar agreement with Harold Fultz, as buyer, dated December 1, 1978, for the sale by Debtor of one share of common stock for $65,000.00 payable by $30,000.00 cash and deferred installment payments of $700.00 per month for the balance of $35,000.00, also evidenced by a promissory note. This agreement, however, was signed by Stepp as President of the debtor corporation, the seller, to Fultz.

The agreement attached to the objection to sale has covenants, as follows:

As security for the amount due Earl G. Stepp, the Corporation shall execute its promissory note and, in addition, the Corporation shall execute a security agreement on all the fixtures, chattels and equipment of the corporation, with the consent of the sole stockholder, Harold Fultz, who is the owner of one share of stock issued and outstanding of the Corporation.

In order to further secure the payment of said obligation to Earl G. Stepp by the Corporation, Harold Fultz as the sole stockholder does hereby pledge all of his one share of stock of Dayton Suzuki Sales, Inc. to Earl G. Stepp as security for the payment of said obligation. Therefore, Harold Fultz does hereby assign and transfer over to Earl G. Stepp his one share of stock and all his right, title, and interest in and thereto, as security for the payment of said obligation. Upon the complete payment of said obligation of $21,000.00 with interest thereon, then Earl G. Stepp shall return the one share of stock to Harold Fultz.

No such security agreement was ever executed, as mentioned in the Agreement of Sale.

The Agreement attached to the secured proof of claim does not contain such a covenant, as to a security agreement to be executed later.

On 5 December 1978 Stepp caused a financing statement to be filed with the Recorder of Montgomery County, Ohio, and on 6 December 1978 with the Ohio Secretary of State, describing an extensive list of shop and office equipment, tools, stock in trade, and testing devices located at the place of business in Dayton, Ohio, Montgomery County.

There was no evidence adduced to explain the two different agreements to sell, or why the agreement of sale to Fultz for the larger indebtedness was attached to the secured proof of claim of Stepp, since it does not even refer to any proposed security agreement.

## DECISION

The objector urges "that as security for the payment by the Debtor corporation to the secured creditor, the Debtor corporation executed and delivered a Financing Statement to the secured creditor." The Trustee and Debtor both insist that the filing of the financing statements would merely perfect a duly executed security agreement, if one were in effect, pursuant to Ohio Revised Code Sections 1309.21 (U.C.C. 9–302) and 1309.39 (U.C.C. 9–402).

This Court has previously held on numerous occasions that if a financing statement has been duly executed and complies with the statutory requirements for both a security agreement and financing statement, a separate security agreement is not necessary if the parties intended a security interest by the signing of the financing statement to be filed. See opinion *In Re Shaffner*, (1966) Case No. 23088 (at Dayton). *Contra* are such cases as *American Card Co. v. H.M.H. Co.* 97 R.I. 59, 196 A.2d 150, holding that a filed financing statement which does not contain the debtor's grant of a security interest does not meet the requirements of Article 9 of the Uniform Commercial Code. Likewise, see *L & V Co. v. Asch,* 267 Md. 251, 297 A.2d 285; and *Crete State Bank v. Lankoff Grain Co.,* 195 Neb. 605, 239 N.W.2d 789; and 30 A.L.R.3d 9, 42, § 11.

The opinion in *Shaffner* rationalizes that the Uniform Commercial Code requires no special terminology, and the formal requisites of a financing statement conformably to Ohio Revised Code § 1309.39 (U.C.C. 9–402(1)) include the minimal requirements for a security agreement prescribed by Ohio Revised Code § 1309.13 (U.C.C. 9–203). Also, a promissory note might likewise constitute a security agreement. Realistically, the fact that a debtor executes a financing statement should not be deemed insignificant; and third parties searching the public files surely are on notice of the substance of the claimed collateral. A "grant" clause can certainly even be oral if such is the intention of the parties. The function of a security agreement as a matter of elementary and fundamental contract law is merely to evidence the intention of the contracting parties.

Looking to the intent of the parties on the facts, *instanter,* however, the very wording of the written sales agreement supplies the determinative intent factor. There can be no doubt that the financing statement as executed was not intended as a security agreement. It specifically stipulates "the Corporation *will execute* a security agreement...." Obviously, for whatever reason, no security agreement was ever granted and the parties apparently intended, at least temporarily, to rely upon the pledge of the corporate stock for security.

Accordingly, the conclusion must follow as a matter of law that neither the requirements of the Uniform Commercial Code nor elementary contract law have been met, and the objection to the Trustee's sale must be overruled.